UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DARRELL RHYME a/k/a JARRELL RANDLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:23-cv-00469-TWP-TAB |
| ) | |
| NICULY POLLEY, ) | |
| KAITLIN JACKOWICZ, ) | |
| UNKNOWN DEFENDANTS, ) | |
| COUNTY OF DECATUR, ) | |
| CITY OF GREENSBURG, ) | |
| ) | |
| Defendants. ) | |

## ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND DISMISSING CLAIMS AGAINST UNKNOWN DEFENDANTS

This matter is before the Court on a Motion for Summary Judgment (Filing No. 66) filed by Defendants Niculy Polley ("Deputy Polley") and the County of Decatur (together, the "Decatur Defendants") and a Motion for Summary Judgment (Filing No. 69) filed separately by Kaitlin Jackowicz ("Officer Jackowicz") and the City of Greensburg (together, the "Greensburg Defendants"). Plaintiff Darrell Rhyme ("Mr. Rhyme"), also known as Jarrell Randle, initiated this § 1983 action alleging illegal seizure, excessive force, failure to intervene, and *Monell* claims. He alleges officers violated his constitutional rights when he was pulled over, pursued, tased, and beaten on the night of March 3, 2023. For the following reasons, both Motions are **granted**. In addition, the claims against the Unknown Defendants are **dismissed**.

### I.      LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary

judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Cmty. Schs.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. Id.

When reviewing a motion for summary judgment, the court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). The court cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour the record" for evidence that is potentially relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 572 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Mr. Rhyme failed to respond to the summary judgment motions. Accordingly, the facts alleged in the motions are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (stating that a party opposing judgment

2

must file response brief and identify disputed facts). However, "even where a nonmovant fails to respond to a motion for summary judgment, the movant still ha[s] to show that summary judgment [is] proper given the undisputed facts." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (citation modified).

## II. BACKGROUND

The designated evidence consists primarily of deposition testimony, affidavits, and video evidence. As noted, Mr. Rhyme defaulted on filing a response to the Defendants' motions for summary judgment, and no statement of disputed facts is a part of this record. Therefore, the Court accepts as true the uncontested facts put forth by Defendants in their statement of facts and construes those facts and the inferences drawn therefrom in Mr. Rhyme's favor to determine whether summary judgment is appropriate in this case. *See* Fed. R. Civ. P. 56(e).

### A. Initial Traffic Stop

On March 3, 2023, Mr. Rhyme was a passenger in a vehicle driven by Jamesha McChristine ("Ms. McChristine") (Filing No. 69-1 at 8). Officer Jackowicz, an officer with the Greensburg Police Department, was in her assigned patrol vehicle that evening when she observed the vehicle driven by Ms. McChristine commit several traffic violations: the vehicle used the right-hand turn lane with the left turn signal on, weaved within the lane, rolled through a stop sign, and, upon entering the interstate, traveled in the left lane at approximately 58–59 miles per hour when the speed limit was 70 miles per hour (Filing No. 66-1 at 25:24–26:1). Officer Jackowicz turned on her red and blue emergency lights to conduct a traffic stop. When she turned on her lights, her synced vehicle dashcam and body-worn camera automatically came on. *Id.* at 4, 35. The driver of the vehicle failed to yield to the right side of the road and instead stopped in nearly the middle of

the left lane on the interstate. *Id.* at 4, 8. Officer Jackowicz directed the driver to park the vehicle on the safer right side of the interstate.

Officer Jackowicz approached the passenger side and knocked on the window (Filing No. 66-1 at 45:1–3; Filing No. 66-12 0:04:48–0:04:53). When the window was rolled down, Officer Jackowicz detected "a very strong odor" of burnt marijuana (Filing No. 66-1 at 45:20–46:12). She asked the female driver and the male passenger for their names and identification. Ms. McChristine, the driver, provided a different name and birthdate. However, she did not have a driver's license on her person and stated she could not remember her social security number (Filing No. 66-1 at 46:23–47:7; Filing No. 66-12 0:06:25–0:06:49). Mr. Rhyme, the passenger, identified himself as Jarrell Randle and gave Officer Jackowicz a date of birth (Filing No. 66-12 0:07:02–0:07:26).

Officer Jackowicz asked the driver and Mr. Rhyme to stay where they were while she returned to her vehicle. Because she had smelled the odor of burnt marijuana, Officer Jackowicz requested backup upon reaching her patrol vehicle (Filing No. 66-1 at 49:8–10). Officer Jackowicz's system returned no match for the name Ms. McChristine gave. *Id.* at 49:11–13. However, the name Mr. Rhyme gave—Jarrell Randle—returned results revealing a temporary protective order against him involving a protected female. *Id.* at 49:13–18. Because the protected female was of a similar age to the driver, Officer Jackowicz suspected that the driver had given a false name and was, in fact, the protected female (Filing No. 66-1 at 122:8–123:11). Based on the marijuana odor and her belief that Mr. Rhyme might have a protective order against him, Officer Jackowicz decided to search the vehicle *Id.* at 123:15–25. She also decided to separate Mr. Rhyme and the driver as a precaution in case the driver was the protected person. *Id.*

4

Deputy Polley from the Decatur County Sheriff's Department arrived as backup. Officer Jackowicz informed him that the female driver did not give her a correct name; the vehicle smelled of Marijuana; the male Jarrell Randel returned with a protection order; the protected female had a similar date of birth to the one given from the driver; and she was going to get the occupants out of the vehicle to begin a search (Filing No. 69-2). The officers discussed searching the vehicle (Filing No. 66-1 at 49:9–21; Filing No. 66-12 0:09:24–0:12:27).

The two officers returned to the stopped vehicle, and Officer Jackowicz asked Mr. Rhyme to step out of the car (Filing No. 66-1 at 52:20–25). He refused and asked why. *Id.* at 53:20–24. Officer Jackowicz repeated her command and opened the car door. *Id.* at 53:24–54:3. Mr. Rhyme again refused. Officer Jackowicz threatened to drag him out of the car. *Id.* at 54:3–5; Filing No. 66-12 at 0:13:35–0:13:44. Mr. Rhyme still did not exit the vehicle. Officer Jackowicz observed the driver shift the car into drive (Filing No. 66-1 at 54:6–7). Officer Jackowicz instructed the driver to put the car back into park. Mr. Rhyme yelled "go, go, go" to the driver, and the vehicle sped off (Filing No. 66-12 at 0:13:59–0:14:01; Filing No. 66-1 at 54:8).

B.      **High Speed Pursuit and Taser Use**

Deputy Polley and Officer Jackowicz returned to their patrol vehicles, and a vehicle chase ensued. Officer Jackowicz pursued because the driver fled, the car smelled like burnt marijuana, and she believed a protective order involved Mr. Rhyme which possibly protected the driver (Filing No. 66-2 at 211:25–212:1, 213:10–17, 220:5–13). The vehicle driven by Ms. McChristine reached a rate of speed of about 126 miles per hour on I-74 (Filing No. 66-1 at 58:15–17). Assisting officers joined in the pursuit and deployed stop sticks, which eventually deflated the vehicle's tires. *Id.* at 59:19–60:9. The pursuit lasted about nine minutes before the vehicle exited the highway and stopped at a BP gas station (Filing No. 66-11 at 0:14:24–0:23:11). BP surveillance footage captured all events after the stop (Filing No. 66-19, Filing No. 66-20).

After coming to a stop, Mr. Rhyme and the driver both fled on foot in opposite directions. Officer Jackowicz observed Mr. Rhyme run from Deputy Polley (Filing No. 66-1 at 62:24–25). Deputy Polley pursued Mr. Rhyme on foot then deployed his taser once for 2.8 seconds before deactivating it (Filing No. 69-5; Filing No. 69-2 at 7; Filing No. 69-4 at 99:25–100:13). The prongs struck Mr. Rhyme in the back of the head and the elbow (Filing No. 69-4 at 111:9–11). Officer Jackowicz heard the taser and observed Mr. Rhyme's body lock up, then fall forward to the ground (Filing No. 66-1 at 63:15–65:1, 71:2–8). Deputy Polley reported that the taser caused a neuromuscular incapacitation, which caused Mr. Rhyme to fall forward onto the pavement (Filing No. 69-2 at 8; Filing No. 69-4 at 72:20–73:12). As Mr. Rhyme fell forward, Officer Polley observed that he landed on his face and slid on the pavement. *Id.*

Deputy Polley placed Mr. Rhyme in handcuffs and asked if he was okay. Mr. Rhyme did not respond, and Deputy Polley saw that Mr. Rhyme was injured, so he began to render aid and radioed for Emergency Medical Services (Filing No. 69-4 at 74:3–8, 75:14–18). Mr. Rhyme suffered face, body, and hand injuries, including a broken jaw, broken nasal cavities, broken orbital sockets, eight missing teeth, and severe facial bleeding (Filing No. 1 ¶ 18; Filing No. 66-26 at 23:23–25).

C.  **Procedural History**

Mr. Rhyme initiated this lawsuit on March 13, 2023 (Filing No. 1). Subsequently, in an underlying criminal case, he was convicted by a jury of two charges related to the incident on March 3, 2023—identity deception and resisting law enforcement (Filing No. 66-10). On February 18, 2025 an Amended Case Management Plan—which contained a dispositive motions deadline of August 1, 2025—was approved (Filing No. 56), and this matter is scheduled for trial by jury on March 9, 2026 (Filing No. 57). The Greensburg Defendants filed for summary judgment on July

31, 2025 (Filing No. 66). The Decatur Defendants filed their Motion for Summary Judgment on August 1, 2025 (Filing No. 69). Mr. Rhyme did not timely file a response.

On November 18, 2025—nearly three months after his response was due—Mr. Rhyme filed a Motion for Extension of Time to File a Response (Filing No. 78). Both the Greensburg Defendants and the Decatur Defendants objected and because of the age of this case, the Court denied the extension of time (Filing No. 86). The summary judgment motions are therefore ripe for the Court's review.

### III. DISCUSSION

Mr. Rhyme's Complaint asserts eight counts and alleges several constitutional violations and state law claims. Count I - 42 U.S.C. § 1983 – Illegal Seizure against Deputy Polley, Officer Jackowicz, and Unknown Defendants; Count II - 42 U.S.C. § 1983 – Excessive Force against Deputy Polley, Officer Jackowicz and Unknown Defendants; Count III - 42 U.S.C. § 1983 – Illegal Seizure-Failure To Intervene against Deputy Polley, Officer Jackowicz, and Unknown Defendants; Count IV - 42 U.S.C. § 1983 - Excessive Force - Failure to Intervene against Deputy Polley, Officer Jackowicz, and Unknown Defendants; Count V – 42 U.S.C. § 1983 – *Monell* Claim-Illegal Seizure against City of Greensburg and County of Decatur; Count VI – 42 U.S.C. § 1983 – Monell Claim-Excessive Force against City of Greensburg and County of Decatur; Count VII – State Law Respondeat Superior against City of Greensburg and County of Decatur; and Count VIII - State Law Indemnification against City of Greensburg and County of Decatur (Filing No. 1 at 5–12). Mr. Rhyme claims that the initial stop was pretextual because, historically, the City of Greensburg and Decatur County have racist policies that implicitly allow racial profiling, and officers still routinely profile, illegally stop, and use excessive force against African Americans driving through the area (Filing No. 1 ¶¶ 21–24). He further alleges that after he was stopped, he was "brutally

beat[en]" and repeatedly kicked by officers while he was laying on the ground (Filing No. 1 at ¶¶ 17, 36).

The Greensburg Defendants argue that Officer Jackowicz had reasonable suspicion to initiate the traffic stop, and indications of criminal conduct permitted her to extend the traffic stop and request that Mr. Rhyme exit the vehicle. They argue that Officer Jackowicz did not use any force against Mr. Rhyme; that the force used by Deputy Polley was objectively reasonable; and that Officer Jackowicz had no realistic opportunity to intervene. Without any underlying constitutional violation by its officers, the Greensburg Defendants argue that the City of Greensburg is not liable, and that no municipal action was taken with "deliberate indifference" nor was the City of Greensburg the "moving force" behind Mr. Rhyme's injury.

The Decatur Defendants argue that Deputy Polley's seizure and force were reasonable because Mr. Rhyme was fleeing, or alternatively, that Deputy Polley is entitled to qualified immunity. They also argue that there was no conduct requiring the Decatur Defendants to intervene and that the County of Decatur is not liable where its employees are not at fault.

The Court will first address the claims against the Unknown Defendants before turning to claims against the named defendants.

A. **Claims against the Unknown Defendants**

Mr. Rhyme names Unknown Defendants in his Complaint and states that these defendants were law enforcement officers. Although there is no prohibition against filing suit against unknown defendants, unknown defendants, like any other defendant, must be served within 90 days of the commencement of the action against them. Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be

made within a specified time."); *Redd v. Dougherty*, 578 F. Supp. 2d 1042, 1048 (N.D. Ill. 2008) (holding that "John Doe" defendants must be served within the same time as other defendant under Rule 4); *Aviles v. Village of Bedford Park*, 160 F.R.D. 565, 567 (N.D.Ill.1995) (same).

Moreover, bringing suit against unnamed or "John Doe" defendants in federal court is generally disfavored by the Seventh Circuit. *Strauss v. City of Chi.*, 760 F.2d 765, 770 n.6 (7th Cir. 1985). The Seventh Circuit has found that "it is pointless to include lists of anonymous defendants in federal court; this type of placeholder does not open the door to relation back . . . nor can it otherwise help the plaintiff." *Wudtke v. Davel*, 128 F.3d 1057, 1060 (7th Cir. 1997) (internal citations omitted).

This case has been pending for nearly three years, and Mr. Rhyme had ample opportunity through pretrial discovery to learn the names of the Unnamed Defendants, to seek leave to add claims against them, and to perfect service. He has not done so. In addition, more than 90 days have passed since the filing of Plaintiff's complaint, and the unknown defendants have not been identified or served. Accordingly, all claims against the Unknown Defendants are **dismissed** for failure to perfect service and prosecute claims against them.

**B.** **Illegal Seizure (Count I)**

A claim under 42 U.S.C. § 1983 for a seizure in violation of the Fourth Amendment will succeed where the plaintiff establishes that: (1) the government's conduct constituted a seizure, and (2) that seizure was unreasonable. *Bentz v. City of Kendallville*, 577 F.3d 776, 779 (7th Cir. 2009) (citing *Bielanski v. County of Kane*, 550 F.3d 632, 637 (7th Cir. 2008)).

Mr. Rhyme alleges illegal seizure at three points: (1) when Officer Jackowicz stopped the vehicle without probable cause that Mr. Rhyme or the driver had committed or were committing any traffic violations or other crimes; (2) when Officer Jackowicz ordered Mr. Rhyme out of the

vehicle during the traffic stop without a warrant or probable cause; and (3) when Deputy Polley ordered him to stop after he exited the vehicle (Filing No. 1 ¶¶ 12, 26–29). For the following reasons, reasonable suspicion or probable cause existed in each instance in which Mr. Rhyme was seized; thus, the illegal seizure claim fails.

1. **The Traffic Stop**

Mr. Rhyme alleges that because Officer Jackowicz lacked a warrant and probable cause to stop the vehicle, the stop violated the Fourth Amendment to the United States Constitution. The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Traffic stops constitute "seizures" under the Fourth Amendment and must therefore be reasonable under the circumstances. *Whren v. United States*, 517 U.S. 806, 809 (1996). Warrantless stops are reasonable when officers reasonably believe the driver has committed a traffic violation, even a minor one. *United States v. Radford*, 39 F.4th 377, 384 (7th Cir. 2022); *see United States v. Phillips*, No. 23-1692, 2024 WL 3842092, at *2 (7th Cir. Aug. 16, 2024). "Because traffic stops are typically brief detentions, more akin to *Terry* stops than formal arrests, they require only reasonable suspicion of a traffic violation—not probable cause." *United States v. Cole*, 21 F.4th 421, 427 (7th Cir. 2021) (citing *Rodriguez v. United States*, 575 U.S. 348, 354 (2015)).

Reasonable suspicion to support a traffic stop requires "more than a hunch but less than probable cause" and is determined under the totality of the circumstances known to the officer at the time of the stop. *United States v. Mays*, 819 F.3d 951, 955 (7th Cir. 2016). This is an objective standard; an officer's subjective motivations for detaining a suspect are irrelevant. *United States v. Jackson*, 962 F.3d 353, 357 (7th Cir. 2020). However, if the officer is mistaken in his belief that the suspect committed an offense, then the court asks whether that mistake was objectively

reasonable, "still without regard to 'the subjective understanding of the particular officer involved.'" *Id.* (citing *Heien v. North Carolina*, 574 U.S. 54, 66 (2014)). An officer's objectively reasonable mistake of law can provide reasonable suspicion for a traffic stop. *See id.*

Officer Jackowicz observed the vehicle—driven by Ms. McChristine—commit at least two moving traffic violations and observed unusual driving behavior (Filing No. 67 at 15). Specifically, the driver entered the right-turn lane with the left turn signal on, switched turn lanes, and did not stop at a stop sign before turning onto the road (Filing No. 66-11 at 0:00:00–0:00:58). Not stopping at a stop sign is a traffic violation under Ind. Code § 9-21-8-32. Then the driver used her turn signal for an extended period and used the turn signal on a single-lane road with no turns (Filing No. 66-11 0:01:12–0:01:36). Finally, the driver moved to the left lane on the highway driving at least ten miles per hour under the posted speed limit (Filing No. 66-11 at 0:02:45–0:03:38). There were no obstructions in the roadway causing the driver to move into the left lane, and, contrary to the allegation in the Complaint (Filing No. 1 ¶ 10), there was not a severe snowstorm in the area explaining the slow driving speed. Driving in the left lane at a speed lower than the posted limit is a traffic violation under Indiana Code § 9-21-5-9(d).

Officer Jackowicz's personal observation of the vehicle driving well below the speed limit in the left lane is, alone, sufficient to support the initial traffic stop, but Officer Jackowicz's also observed other traffic violations and unusual driving behavior. Based on the totality of these circumstances, the observations at the time of the stop support reasonable suspicion. The traffic stop was not an illegal seizure.

The Court acknowledges Mr. Rhyme's subjective intent allegations about the historical context and subjective racial motivation for the stop, but for reasonable suspicion, the Court must

proceed under an objective analysis. In addition, Mr. Rhyme has designated no evidence to support these allegations. Accordingly, the Court does not delve into his subjective intent allegations.

### 2. Officer Jackowicz Ordering Mr. Rhyme Out of the Vehicle at the Traffic Stop

"[U]nder the Fourth Amendment, information suggesting possible criminal activity that an officer lawfully discovers during a valid traffic stop can justify lengthening the stop in order to conduct a reasonable investigation." *Buchanan v. Kelly*, 592 F. App'x 503, 506 (7th Cir. 2014). After a lawful stop, an officer can order occupants out of a car. *United States v. Jackson*, 103 F.4th 483, 490 (7th Cir. 2024) (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977)). The Seventh Circuit recently confirmed that the smell of marijuana alone will justify a Fourth Amendment seizure. *Id.* at 488; *see also United States v. Kizart*, 967 F.3d 693, 698 (7th Cir. 2020) (holding that "the smell of burnt marijuana plus other suspicious activity may provide probable cause for the search of an entire vehicle").

As part of a traffic stop, officers may ask the vehicle's occupants a moderate number of questions and request their identification. *United States v. Muriel*, 418 F. 3d 720, 726 (7th Cir. 2005). Here, "Jarrell Randle," the name falsely given by Mr. Rhyme to Officer Jackowicz, returned in the system with a protective order for a female around the driver's age. Based on her suspicion that the driver might be the protected female, Officer Jackowicz wanted to separate Mr. Rhyme and the driver. Accordingly, there was probable cause to order Mr. Rhyme to exit the vehicle after the traffic stop was initiated.

Officer Jackowicz's decision to search the vehicle was based in part on the odor of marijuana she smelled when the passenger rolled down the window. Mr. Rhyme alleges that neither the driver nor Mr. Rhyme had committed or was committing any crimes at the time of the stop, however the designated evidence shows that there were several already smoked marijuana roaches

and .08 grams of marijuana in the vehicle (Filing No. 66-3 at 85:17–86:7). Whether the odor of marijuana alone would be sufficient to justify a search of the vehicle is not relevant, because no search occurred at that time. What is relevant is that the smell of burnt marijuana and the totality of the circumstances gave Officer Jackowicz a reasonable basis for extending the stop and asking Mr. Rhyme to step out of the vehicle.

### 3. Deputy Polley Ordering Mr. Rhyme to Stop after Exiting the Vehicle

Decatur Defendants admit that Deputy Polley's conduct was a seizure but argue that the undisputed evidence establishes it was reasonable (Filing No. 71 at 7). The Court agrees, noting that Mr. Rhyme fled the traffic stop at over 120 miles per hour and continued to evade law enforcement for over nine minutes at that speed. Given this conduct, there was clear cause for Mr. Rhyme's arrest. Therefore, when Deputy Polley ordered Mr. Rhyme to stop after another attempted flight, there was no illegal seizure.

In sum, summary judgment is **granted** with respect to Count I because Officer Jackowicz's stop and both officer's seizures were reasonable.

### C.    Excessive Force (Count II)

"Although police officers may use force to seize another person under appropriate circumstances, the Fourth Amendment protects against the use of excessive force." *Taylor v. City of Milford*, 10 F.4th 800, 806 (7th Cir. 2021). "The question whether a particular use of force has crossed the constitutional line is governed by the Fourth Amendment, which prohibits unreasonable seizures." *Weinmann v. McClone*, 787 F.3d 444, 448 (7th Cir. 2015). Courts analyze excessive force cases under an objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989).

The Fourth Amendment's "reasonableness" test is "not capable of precise definition or mechanical application." *Id.* at 396 (citation omitted). "'[T]he question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Taylor*, 10 F.4th at 806 (quoting *Graham*, 490 U.S. at 397) (alteration in original). "Such an analysis is inherently fact-dependent, requiring consideration of such factors as the severity of the crime at issue, whether the person posed an immediate threat to the safety of the officers or others, and whether the person was actively resisting the officers." *Williams v. Ind. State Police Dep't*, 797 F.3d 468, 472–73 (7th Cir. 2015) (citing *Graham*, 490 U.S. at 396). "Whether a particular use of force was objectively reasonable 'is a legal determination rather than a pure question of fact for the jury to decide.'" *Dockery v. Blackburn*, 911 F.3d 458, 464 (7th Cir. 2018) (quoting *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 520 (7th Cir. 2012)).

In addition, the reasonableness of an officer's actions must be assessed from the perspective of a reasonable officer on the scene, not based on the "20/20 vision of hindsight." *Graham*, 490 U.S. at 396. That assessment must include a recognition that officers are often forced to make split second judgments in tense, uncertain, and rapidly evolving situations as to the amount of force necessary in a particular situation. *Id.* at 396–97. Mr. Rhyme alleges that both Officer Jackowicz and Deputy Polley used excessive force against him in violation of his constitutional rights. The Court will examine each officers' use of force in turn.

1. **Officer Jackowicz**

Mr. Rhyme alleges that Officer Jackowicz physically battered him while he was on the ground and used excessive force (Filing No. 1 ¶ 36–37). The Greensburg Defendants argue that Officer Jackowicz never apprehended Mr. Rhyme or used force against him (Filing No. 67 at 14).

Officer Jackowicz's conduct was captured on body camera and on her patrol vehicle's dash camera both before and after Mr. Rhyme was tased (Filing No. 66-12 at 0:22:59–0:23:12; Filing No. 66-11 at 0:23:23–0:23:30). BP gas station surveillance footage also documented these events. The designated evidence clearly shows that Officer Jackowicz did not use any force against Mr. Rhyme at any point before or after the tasing.

### 2. Deputy Polley

Mr. Rhyme alleges that Deputy Polley used greater force than necessary when he tased him in the back of the head and the elbow (Filing No. 1 ¶¶ 34–35). In addition, he claims that he was "brutally beat[en]" and kicked and hit by officers while he was on the ground after being "repeatedly" tased. *Id.* ¶¶ 14, 36. For the reasons stated below, the Court finds that Deputy Polley's use of the taser was reasonable given that Mr. Rhyme was fleeing and that no force was used on Mr. Rhyme after he was on the ground.

#### a. Taser Use was Reasonable

It is "clearly established that more force may be used for fleeing suspects than for suspects that are at most passively resisting arrest." *Becker v. Elfreich*, 821 F.3d 920, 929 (7th Cir. 2016). Determining whether an officer's deployment of a taser amounts to a reasonable use of force "is an objective inquiry that turns on how a reasonable officer would have perceived the circumstances." *Dockery*, 911 F.3d at 466 (internal citation omitted). An officer's use of a taser is constitutionally reasonable against an "actively resisting subject." *Id.*

Alternatively, Deputy Polley asserts a qualified immunity defense to the excessive force claim against him. The qualified immunity doctrine is an affirmative defense, and once the defense is raised, it becomes the plaintiff's burden to defeat it. *Smith v. Finkley*, 10 F.4th 725, 737 (7th Cir. 2021) (citation omitted). Therefore, Mr. Rhyme bears the burden of overcoming Deputy Polley's

qualified immunity defense by establishing that: (1) Deputy Polley violated the Fourth Amendment by using a taser on Mr. Rhyme; and (2) as of March 3, 2023, it was clearly established that an officer using a taser against a suspect in circumstances similar to those presented in this case violates the Fourth Amendment.

Case law in the Seventh Circuit suggests that attempting to evade arrest by flight, and specifically by running, may justify the use of force. *See Smith*, 10 F.4th at 736. The Decatur Defendants argue:

> The law is clearly established that officers may use more force against fleeing suspects than those who are passively resisting arrest. *Becker v. Elfreich*, 821 F.3d 920, 929 (7th Cir. 2016) (emphasis added). The matter at hand is similar to *Johnson v. Scott*, in which officers used reasonable force when allowing their police dog to bite a suspect who had "used every method at his disposal to flee from police." 576 F.3d 658, 660 (7th Cir. App. 2009).

(Filing No. 71 at 17). They also point out that "this Court previously determined that a police officer was entitled to qualified immunity where he used a taser on an unarmed, fleeing suspect." *Id.* at 17 (citing *Wynn v. City of Indianapolis*, No. 1:20-cv-1638-JMS-MJD, 2022 U.S. Dist. LEXIS 69871, at *33 (S.D. Ind. Apr. 14, 2022)). *Id.* at 17-18.

The precise details of the circumstances under which Officer Polley deployed his taser are undisputed based on the designated evidence. Deputy Polley's decision to use his taser was objectively reasonable because Mr. Rhyme attempted to evade arrest by fleeing on foot. This was Mr. Rhyme's second attempt to evade law enforcement, following a high-speed chase. Although the Complaint contends that Mr. Rhyme complied with orders to stop by surrendering, video evidence unequivocally shows that Mr. Rhyme did not submit to Deputy Polley's authority and was attempting to flee. Deputy Polley deployed his taser only once, and for less than the default setting, ensuring that the force used was no greater than necessary to detain Mr. Rhyme. Under the

totality of these circumstances, Deputy Polley's deployment of the taser was objectively reasonable.

Accordingly, the Court concludes that Mr. Rhyme has failed to meet his burden of demonstrating that it was clearly established as of March 3, 2023 that an officer violates the Fourth Amendment by deploying a taser against a suspect under the circumstances in which Deputy Polley deployed his taser against Mr. Rhyme. Deputy Polley is therefore entitled to qualified immunity on Mr. Rhyme's excessive force claim based on his deployment of his taser against a fleeing suspect.

### b. No Force Used While Mr. Rhyme was on the Ground

The video surveillance footage from the BP gas station, the body-worn camera of Officer Jackowicz and another officer, and dash camera footage do not support Mr. Rhyme's assertion that any force was used while he was on the ground, let alone excessive force. The evidence does not show any officers beating, kicking, or hitting him. Moreover, Mr. Rhyme testified in his deposition that he does not remember anything after being tased. He testified that after he tried to run to the gas station, all he remembered was waking up in the hospital (Filing No. 66-26 at 23:6–9). Mr. Rhyme has no independent recollection of being beaten, kicked, or hit by Deputy Polley or any other officer. He has offered no evidence to support this allegation.

Mr. Rhyme's injuries are unfortunate and severe, but the record indicates that they resulted from a fall onto the pavement following Deputy Polley's reasonable use of his taser rather than excessive force. The designated evidence, which includes numerous depositions, body camera footage, and surveillance footage, provides clear and undisputed evidence that the force used against Mr. Rhyme was no greater than necessary. Therefore, the Greensburg and Decatur Defendants' motions for summary judgment are **granted** with respect to Count II.

D.     **Failure to Intervene (Counts III and IV)**

"An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). "In sum, an officer must know that a citizen's rights are being infringed, and he must have a 'realistic opportunity' to intervene." *Doxtator v. O'Brien*, 39 F.4th 852, 864–65 (7th Cir. 2022).

The undisputed evidence shows that no violation of Mr. Rhyme's constitutional rights occurred. Consequently, Mr. Rhyme's failure to intervene claims fail as a matter of law. *See Abdullahi v. City of Madison*, 423 F.3d 763, 767–68 (7th Cir. 2005) ("Though legally distinct, the fate of plaintiff's failure to intervene claim is closely linked to that of her excessive force claim since, by definition, if there was no excessive force then there can be no failure to intervene."). Similarly, there was no illegal seizure, so there was no realistic opportunity to intervene. Summary judgment is **granted** on Counts III and IV, Mr. Rhyme's failure to intervene claims.

E.     ***Monell*** **Claims Against City of Greensburg and County of Decatur (Counts V–VII)**

Municipalities may be liable for 42 U.S.C. § 1983 claims when they are directly responsible for a constitutional deprivation. *Ruiz-Cortez v. City of Chi.*, 931 F.3d 592, 598 (7th Cir. 2019) (citing *Monell v. Dep't of Sec. Servs.*, 436 U.S. 658, 691–94 (1978)). Because both Officer Jackowicz and Deputy Polley's seizures of Mr. Rhyme were reasonable and there was no excessive force, the claims against their respective law enforcement agencies fail. Without underlying constitutional violations by officers in the scope of their employment there can be no *Monell* or

18

respondeat superior claims against the agencies. The state law indemnification claim also fails for the same reason. Accordingly, summary judgment is **granted** as to Counts V–VII.

## IV. CONCLUSION

For the reasons discussed above, Defendants City of Greensburg and Kaitlin Jackowicz's Motion for Summary Judgment (Filing No. 66) is **GRANTED**, and Defendants County of Decatur and Niculy Polley's Motion for Summary Judgment (Filing No. 69) is **GRANTED**.

Mr. Rhyme's claims against the Unknown Defendants are **DISMISSED** without prejudice, for failure identify and effectuate service and failure to prosecute. Mr. Rhyme's Motion for Extension of Time to Extend Deadlines in Case Management Order (Filing No. 81) is **DENIED** as moot. Final judgment will issue under separate order.

**SO ORDERED.**

Date: 12/9/2025

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Allissa Aardema
Kightlinger & Gray ,LLP
aaardema@k-glaw.com

Christine L. Bartlett
FERGUSON & FERGUSON
clb@ferglaw.com

Pfenne Peter Cantrell
Kightlinger & Gray, LLP
pcantrell@k-glaw.com

David L. Ferguson
FERGUSON & FERGUSON
dlf@ferglaw.com

Gigi Gilbert
Gigi Gilbert
gigigilbert@gigigilbert.com